NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL HOCHMEYER., <br><br> Plaintiff, <br><br> v. <br><br> FEIN SUCH KHAN & SHEPARD, P.C.; SELECT PORTFOLIO SERVICES, INC., <br><br> Defendants. | Civil Action No.: 16-4531 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge

This matter comes before the Court by way of a motion to dismiss the complaint, filed by Defendants Fein Such Khan & Shephard, P.C. (the "Law Firm") and Select Portfolio Services, Inc. ("SPS") (collectively, "Defendants"). (ECF No. 4). Plaintiff Michael Hochmeyer has opposed this motion (ECF No. 6), and Defendants have replied to that opposition (ECF No. 7). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Court grants Defendants' motion to dismiss Plaintiff's complaint.

## I. Background[1]

On May 18, 2006, Plaintiff Michael Hochmeyer refinanced a mortgage loan for his home in Westwood, New Jersey. (Compl. ¶¶ 3, 7). In connection with the refinancing, Plaintiff executed

---

[1] The facts as stated herein are taken as alleged in Plaintiff's Complaint. (ECF No. 1, "Compl."). For purposes of this Motion to Dismiss, these allegations are accepted by the Court as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) ("The District Court, in deciding a motion [to dismiss under Rule] 12(b)(6), was required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].").

1

a promissory note payable to Decision One Mortgage Company, LLC. (*Id.* ¶ 8). Pursuant to Paragraph 7 of the note, in the event that Plaintiff defaulted on his mortgage payment, the lender could exercise its right to accelerate the loan, therefore demanding full payment of any outstanding principal and interest owed. (*Id.* ¶ 10).

In late 2006, "[d]ue to unforeseen economic circumstances[,] Plaintiff defaulted on the mortgage loan." (*Id.* ¶ 11). Therefore, in early 2007, the lender advised Plaintiff in writing that it was exercising its right to accelerate the loan. (*Id.* ¶¶ 13-14). A foreclosure action was filed against Plaintiff on August 23, 2007, in the Superior Court of New Jersey. (*Id.* ¶16). For reasons unknown to this Court, that foreclosure action was later dismissed. (*Id.* ¶ 19).

In the instant action, Plaintiff alleges that the Defendants violated the Fair Debt Collection Practices Act, 29 U.S.C. § 1692 ("FDCPA") vis à vi three separate "communications," as that term is defined by the FDCPA. Specifically, Plaintiff alleges that the following communications contained empty threats to initiate a time-barred debt-collection lawsuit: (1) a September 4, 2015 letter from the Law Firm; (2) an October 6, 2015 letter from SPS, and; (3) a March 17, 2016 foreclosure action filed in the Superior Court of New Jersey.

By letter dated September 4, 2015, the Defendant Law Firm advised Plaintiff:

> **THIS FIRM IS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS NOTICE IS REQURIED BY THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT AND DOES NOT IMPLY THAT THE MORTGAGEE IS ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO IS NOT AN OBLIGOR ON THE LOAN OR WHOSE DEBT HAS BEEN DISCHARGED UNDER THE BANKRUPTCY OR ANY OTHER LAWS OF THE UNITED STATES.**
>
> Please be advised that this firm has been retained to represent the above named mortgage creditor. At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, our client may consider additional remedies to recover the balance due.
>
> . . .

> As of the date of this letter, you owe a balance of $1,126,987.41. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you before processing your payment. . . .
>
> Unless, within thirty days after receipt of this notice, you dispute the validity of the debt or any portion thereof, we will assume the debt to be valid. If, within thirty days after your receipt of this notice, you notify us in writing that the debt or any portion thereof is disputed, we will obtain a verification of the debt or, if the debt is founded upon a judgment, a copy of such judgment, and we will mail to you a copy of such verification or judgment. If the original creditor is different from the creditor named above, then upon your written request within thirty days after the receipt of this notice we will provide you with the name and address of the original creditor. For more detailed payoff information, please submit a written request . . . .
>
> However, if you dispute the debt in writing or if you request proof of the debt or the name and address of the original creditor within the thirty day time period that begins upon receipt of this letter, the law requires that we stop our collection efforts (through litigation or otherwise) to collect the debt or until we mail the requested information to you.
>
> This firm is hired to collect on this debt but will only file a foreclosure suit in New Jersey and will not file suit anywhere outside of New Jersey. The law does not require that we wait until the end of the thirty-day period before commencing suit against you in New Jersey to collect this debt except that if, you request proof of the debt or the name and address of the original creditor within the thirty day time period that begins upon your receipt of this notice, the law requires that we stop our collection efforts (through foreclosure in New Jersey) to collect the debt until we mail the requested information to you.

(Compl., Exh. 3).

Thereafter, Plaintiff received the October 6, 2015 from SPS, the loan servicing company responsible for collecting Plaintiff's mortgage payments. (*Id.* ¶¶ 4, 23). The letter is titled **"NOTICE OF INTENT TO FORECLOSE."** (*Id.*, Exh. 4). The letter proceeds as follows.

> The mortgage loan on your property is in default as a result of your failure to make payments as required by the Note and Deed of Trust or Mortgage (Security Instrument). We have previously sent you letters and communications regarding this default in an attempt to resolve this matter. The letter provides information about the default and what rights you have to cure the default. Select Portfolio Servicing, Inc. (SPS) services your mortgage loan and has been instructed on behalf of the holder of the promissory note (the

3

"Lender") to pursue remedies under the Security Instrument unless you take action to cure the default before the Cure Date shown below.

The Letter goes on to state that if the default is not cured, "SPS may accelerate and require that you pay all amounts owing and secured by the Security Instrument in full, and may take steps to terminate your ownership in the property by referring your loan to outside counsel to commence a foreclosure action . . . ." Further, the letter explains that Plaintiff "**Ha[s] Options to Avoid Foreclsure!**," and notifies Plaintiff that "[i]f [SPS] can reach an agreement to resolve your default, we will not proceed with and/or commence foreclosure, as long as you comply with the agreement and make required payments."

In response to the SPS letter, by letter dated October 14, 2015, Plaintiff's counsel advised SPS that "any attempt to collect upon the debt in Court is time barred pursuant to N.J.S.A. 12A:3-118 which imposes a six year statute of limitations following the acceleration of a debt." (*Id.*, Exh. 5). Plaintiff's counsel further stated that "[c]ommencement of the 2007 litigation together with extra-judicial collection efforts at that time constituted an acceleration of the debt." (*Id.*).

Thereafter, on March 17, 2016, the Law Firm filed a foreclosure action against Plaintiff in the Superior Court of New Jersey. (*Id.*, Exh. 6). The complaint is titled "**COMPLAINT IN FORECLOSURE.**" Among other allegations, the foreclosure complaint states:

> The obligation aforesaid contained an agreement that if any installment payment of interest and principal, taxes and/or insurance premiums should remain unpaid for more than (30) thirty days from the date of the Notice of Default is mailed to the Obligor, the whole principal sum with all unpaid interest, should, at the option of the above named mortgagee or its assigns, become immediately due and payable.
>
> . . .
>
> The mortgagors, obligors, their grantee or grantees, if any has defaulted in making their monthly mortgage payment to the Plaintiff herein as required by the terms of the obligation and mortgage referred to in paragraphs 1 and 2 above, and said payments have remained unpaid for more than (30) thirty days from the date of mailing Notice of Default to the Obligor, and are still unpaid.

4

> Plaintiff herein, by reason of said default, elected that the whole unpaid principal sum due on the aforesaid obligation and with mortgage referred to in Paragraphs 1 and 2 above, with all unpaid interest and advanced made thereon, shall now be due. The date of default is December 1, 2006.

(*Id.* ¶ 27, Exh. 6). Accompanying the foreclosure complaint was a notice containing the following disclosure: "This firm is a debt collector attempting to collect a debt. Any information we obtain will be used for that purpose. If you have any previously received a discharge in bankruptcy, this communication is not and should not be construed to be an attempt to collect a debt, but only enforcement of a lien against the property." (*Id.*).

Against this backdrop, Plaintiff instituted this action on July 26, 2016, alleging that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 29 U.S.C. § 1692. Plaintiff alleges that the Law Firm's September 4, 2015 letter, SPS's October 6, 2015 letter, and the March 2016 foreclosure complaint (collectively, "the communications") are communications by debt collectors that contain false or misleading representations. Specifically, Plaintiff maintains that the communications contained "threats to take legal action to enforce a promissory note even though the right to enforce the debt instrument through legal recourse was time barred." (Compl. ¶ 37).

Defendants filed the pending motion to dismiss on September 22, 2016. (ECF No. 4, "Defs.' Mov. Br."). Plaintiff opposed this motion on October 3, 2016 (ECF No. 6, "Pl.'s Br."), and Defendants replied to same on October 7, 2016 (ECF No. 7, "Defs.' Reply Br."). This matter is now ripe for the Court's adjudication.

## II.     Legal Standard

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the

complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

### III. Discussion

#### a. FDCPA Background

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). When Congress passed the legislation in 1977, it found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and invasions of individual privacy." *Id.* § 1692(a). Against this backdrop, the Third Circuit has noted that "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013). Accordingly, the Court must "analyze the communication giving rise to the FDCPA claim 'from the perspective of the least sophisticated debtor.'" *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). "[W]hile the least sophisticated debtor standard protects naive consumers, 'it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'" *Brown v. Card Serv. Ctr.*, 464

F.3d 450, 454 (3d Cir. 2006) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000)).

To state a claim for relief under the FDCPA, "a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) (citation omitted). Here, Defendants do not dispute that Plaintiff has sufficiently pleaded the first three elements of his FDCPA claim; rather, the only issue before the Court is whether Plaintiff has pleaded that Defendants violated the FDCPA in attempting to collect a debt.

### b. Parties' Arguments

With respect to the fourth element of his claim, Plaintiff alleges that Defendants violated Sections 1692f and 1692e(5) of the Act. Section 1692(f) generally prohibits a debt collector from "us[ing] any unfair or unconscionable means to collect or attempt to collect a debt." 15 U.S.C. §1692f. Section 1692e(5), more specifically, prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken."

In this case, Plaintiff alleges that Defendants' communications contained empty threats to collect on a debt that was time-barred, in violation of Section 1692e(5). That is, Plaintiff alleges that Defendants' communications threatened to enforce the promissory note even though enforcement of the note would have been barred under New Jersey's statute of limitations for enforcing negotiable instruments. (Compl. ¶37). According to Plaintiff, promissory notes to secure a residential mortgage are negotiable instruments under New Jersey law, and are therefore governed by the Uniform Commercial Code ("UCC"). (Pl.'s Br. at 11-12). The UCC provides that "an action to enforce the obligation of a party to pay a note payable at a definite period of time

must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date." N.J.S.A. § 12A:3-118. Plaintiff alleges that the filing of the 2007 complaint triggered the acceleration date, and that any lawsuit to enforce that note was time-barred as of August 22, 2013. (Compl. ¶ 21). Plaintiff argues that each of the communications, which post-date August 22, 2013, when construed from the viewpoint of the least sophisticated consumer, "made implicit and explicit threats to file a lawsuit and enforce the time barred promissory note." (Pl's. Br. at 9).

For their part, Defendants argue that Plaintiff's claims should be dismissed for failure to state a claim. According to Defendant, "[f]oundational to Plaintiff's Complaint is the notion that enforcement of the Note vis-à-vis the 2016 Foreclosure Action is time-barred pursuant to N.J.S.A. §12A:3-118. (Defs.' Mov. Br. at 6). However, Defendants define the communications as seeking to enforce the promissory note by way of bringing a foreclosure actions which, unlike actions to enforce a negotiable instrument, are not subject to a six-year statute of limitations. According to Defendants, the six-year statute of limitations relied upon by Plaintiff is inapposite to the case at bar. Defendants instead argue that "an action to enforce the Note by way of foreclosure on real estate intended to secure repayment of the Note, as opposed to an action by way of money damages against a signatory to a promissory note" is governed by a N.J.S.A. § 2A:50-56.1, titled "Statute of limitations relative to residential mortgage foreclosures." This statute provides:

> An action to foreclose a residential mortgage shall not be commenced following the earliest of:
> a. Six years from the date fixed for the making of the last payment or the maturity date set forth in the mortgage note . . . ;
> b. Thirty-six years from the date of recording of the mortgage . . . .' or
> c. Twenty years from the date on which the debtor defaulted, which default has not been cured, as to any of the obligations or covenants contained in the mortgage or in the note . . . .

N.J.S.A. §2A:50-56.1.

In short, Defendants argue that "[s]ince the 2016 Foreclosure Action is an action on the mortgage, not on the Note, the statute of limitations fixed by N.J.S.A. §2A:50-56.1 is applicable to the 2016 Foreclosure Action, not N.J.S.A. §12A:3-118. (Defs.' Mov. Br. at 9).

The question before the Court is whether, when viewed from the perspective of the least sophisticated consumer, any of the three communications at issue could reasonably be construed as containing a threat to sue on a time-barred debt, as opposed to a threat to bring a foreclosure action. Having carefully reviewed each of the communications, the Court finds that when each communication is read in its entirety—as the law demands of even the least sophisticated consumer, *see Campuzano-Burgos v. midland Credit Mgmt.*, 550 F.3d 294, 299 (3d Cir. 2008) — it is apparent that the communications threaten foreclosure. The Court addresses each communication in turn.

With respect to the Law Firm's September 4, 2015 letter, the Court notes that the final paragraph of the letter makes apparent that any litigation filed will be an action in foreclosure. The Law Firm explains that it "is hired to collect on this debt but will only file a *foreclosure suit* in New Jersey and will not file suit anywhere outside of New Jersey." (Compl., Exh. 3 at 2) (emphasis added). The final paragraph also explains that "the law requires we stop our collection efforts (*through foreclosure in New Jersey*) to collect the debt until we mail the requested information to you." (*Id.*) (emphasis added). Thus, even the least sophisticated consumer, having read the Law Firm's September 4th letter in its entirety, would understand same to contain a threat to bring a foreclosure action.

As far as SPS's October 6, 2016 letter, the Court notes that the top of the first page contains the following language: "**NOTICE OF INTENTION TO FORECLOSE**." (Compl., Exh. 4 at

9

1). The letter explains that SPS will "pursue remedies under the Security Instrument unless you take action to cure the default before the Cure Date shown below." (*Id.*). SPS further advises Plaintiff that he may cure the default, and subsequently explains, under a heading entitled "Possible Consequences of Default," that SPS "may take steps to terminate your ownership in the property by referring your loan to outside counsel to commence a foreclosure action in a court of competent jurisdiction." (*Id.* at 3). Moreover, SPS advises Plaintiff that if an agreement is reached to resolve his default, SPS "will not proceed with and/or commence foreclosure . . . ." (*Id.*). Then, lest there could be any question as to whether the October 6th letter threatens a foreclosure action, the letter provides that "[a]s provided in the Security Instrument and under New Jersey law you have the right to reinstate your loan even after foreclosure has been initiated and prior to the time that a final judgment of foreclosure is entered." (*Id.*). Given these explicit references to foreclosure, the Court finds that viewed from the perspective of the least sophisticated consumer, the October 6th letter contains threats to foreclose on the property rather than a threat to collect on the time-barred debt.

Finally, the Court considers the March 17, 2016 foreclosure action. From the outset, the Court notes that the filing is conspicuously titled, **"COMPLAINT IN FORECLOSURE."** (Compl., Exh. 6 at 1). Accompanying the foreclosure complaint is the "Foreclosure Case Information Statement," which accompanies the filing of foreclosure actions pursuant to New Jersey Court Rule 4:5-1(b)(1) as well as an "Attorney Certification of Diligent Inquiry to Annex to Residential Mortgage Foreclosure Complaints" pursuant to New Jersey Court Rule 1:5-6(c)(1)(E). Additionally, a review of the relief Defendants seek in the foreclosure action provides further clarification that the State Court action is, truly, one for foreclosure of property. Among other relief, Defendants (who are Plaintiffs in the foreclosure action) request a judgment "that the

lands described . . . above be sold according to law to satisfy the amount due to Plaintiff on the Mortgage" and "[b]arring and foreclosing all of the Defendants, of all equity or redemption in the aforesaid lands." Given the style and format of the foreclosure complaint, as well as the relief sought (namely, the foreclosure of Plaintiff's property), the Court finds that the least reasonable consumer would construe the March 2016 complaint as an action seeking to foreclose on the property rather than an action to collect on a promissory note.

In short, the Court agrees with Defendants that the communications at issue in this action do not, as Plaintiff alleges, contain empty threats to collect on a time-barred debt. Rather, these communications are more reasonably construed as threating to file a foreclosure action if Plaintiff failed to cure his default. As Plaintiff's ability to plead the fourth element of his FDCPA claims rise and fall on his allegations that the communications contain an empty threat to collect on a time-barred debt, the Court finds that Plaintiff has failed to state a claim for relief. Accordingly, the Court grants Defendants' motion to dismiss.

### IV. Conclusion

For the reasons stated above, the Court grants Defendants' motion to dismiss Plaintiff's Complaint. An appropriate Order accompanies this Opinion.

DATED: October 27, 2016

JOSE L. LINARES, U.S.D.J.